## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SOME, INC.

        Plaintiff,

        v.

THE HANOVER INSURANCE COMPANY,

THE HANOVER AMERICAN INSURANCE
COMPANY,

and

MAURY, DONNELLY & PARR, INC.

        Defendants.

Civil Action No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff SOME, Inc. ("SOME"), through counsel, for its complaint against Defendants

The Hanover Insurance Company and The Hanover American Insurance Company (together,

"Hanover") and Maury, Donnelly & Parr, Inc. ("MDP"), alleges and states as follows:

### NATURE OF THIS ACTION

1.     This is an action for declaratory judgment and breach of contract, in which SOME

seeks an adjudication of its rights against Hanover under two insurance policies that Hanover

sold to SOME.  First, The Hanover Insurance Company sold Commercial Inland Marine Policy

No. IHQ A759841 00 to SOME for the period October 29, 2015 to April 30, 2018 ("Builders

Risk Policy").  A copy of the Builders Risk Policy is attached hereto as **Exhibit A**.  Second, The

Hanover American Insurance Company sold Commercial Line Policy No. ZZQ D127251 to

SOME for the period January 1, 2018 to January 1, 2019 (the "Master Policy").  A copy of the

relevant portions of the Master Policy are attached hereto as **Exhibit B**.  Both the Master Policy

and the Builders Risk Policy (together, the "Policies") covered SOME's interests in a property

known as the Conway Center located at 4412-4430 Benning Road, NE, Washington DC. Hanover has wrongfully refused to provide insurance coverage for a loss suffered by SOME at that property.

2.      Specifically, Hanover has refused or failed to pay for physical damage to property, resulting damage, and mitigation costs, all of which are insured under the Policies. SOME had a reasonable expectation of coverage for these losses under the Policies.

3.      In the event the Policies are found not to provide coverage for SOME's claimed loss, SOME's insurance broker, MDP, negligently misrepresented the coverage under the Master Policy that MDP procured for SOME and failed to ensure that the Master Policy provided the coverage that MDP said it was procuring from Hanover for SOME.  As a result, MDP is liable to SOME for the resulting losses that would have been covered had MDP procured the coverage that it described.

## THE PARTIES

4.      Plaintiff SOME is a citizen of the District of Columbia as it is a non-profit corporation, organized under the laws of, and with its principal place of business in, the District of Columbia.

5.      Upon information and belief, Defendant The Hanover Insurance Company is not a citizen of the District of Columbia in that it is a corporation organized under the laws of the State of New Hampshire, with its principal place of business in Worcester, Massachusetts.

6.      Upon information and belief, Defendant The Hanover American Insurance Company is not a citizen of the District of Columbia in that it is a corporation organized under the laws of the State of New Hampshire, with its principal place of business in Worcester, Massachusetts.

7.     Upon information and belief, both The Hanover Insurance Company and The Hanover American Insurance Company are licensed to, and do in fact, conduct business as property and casualty insurers in the District of Columbia.

8.     Upon information and belief, Defendant MDP is not a citizen of the District of Columbia in that it is a corporation organized under the laws of the State of Maryland, with its principal place of business in Baltimore, Maryland, and is licensed to do and does conduct business in the District of Columbia.

## JURISDICTION AND VENUE

9.     This Court has personal jurisdiction over Hanover because it contracted with SOME in the District of Columbia and the claims in this matter arise from Hanover's insuring the property at issue in these proceedings that is located in the District of Columbia and its action in denying coverage for the loss suffered by SOME.

10.     This Court has personal jurisdiction over MDP because it contracted with SOME in the District of Columbia and the claims in this matter arise from MDP's relationship with SOME.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between SOME and the defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12.     Venue is proper in this Court under 28 U.S.C. § 1391 because both Hanover and MDP transact business in this District and a substantial portion of the events giving rise to the claims at issue occurred in this District.

## FACTUAL BACKGROUND

### The Conway Center

13.     SOME (So Others Might Eat) is an interfaith, community-based organization that exists to help homeless and low-income individuals and families in the District of Columbia. SOME works to meet immediate daily needs by providing food, clothing, and healthcare. SOME also works to break the cycle of homelessness by offering services, such as affordable housing, job training, addiction treatment, and counseling.

14.     In 2015, SOME contracted with Bozzuto Construction Company for the construction of the Conway Center as described in construction plans and specifications prepared by Wiencek + Associates Architects + Planners DC, LLP ("W+A") and Meyer Consulting Engineers Corporation ("MCE").  The Conway Center was intended to serve SOME's mission by providing 202 units of affordable housing, a job training center, and medical and dental care facilities.

15.     The Conway Center's structural members were designed to be constructed with a combination of reinforced concrete and structural steel.  The structural members were designed to sustain a certain amount of force, comprised of both dead load (the weight of the building itself) and live load (the weight of people, vehicles, furnishings, fixtures, *etc.*).  Once complete, the Conway Center would consist of a three-story below-grade parking garage, with seven above-grade floors of finished space.

### The Builders Risk Policy

16.     The Builders Risk Policy insured the construction of the Conway Center.  The Hanover Insurance Company agreed to provide up to $60,933,000 in limits of coverage, subject to a $5,000 deductible.  The Builders Risk Policy provided coverage for "direct physical loss or

damage caused by a covered peril to 'buildings or structures' while in the course of construction, erection or fabrication." (**Ex. A** at 15).

17.    A covered peril includes all "risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded." (*Id.* at 24).

18.    The Builders Risk Policy contains the following exclusion:

**c. Defects, Errors, And Omissions –**

"We" do not pay for loss or damage caused by or resulting from an act, defect, error, or omission (negligent or not) relating to:

1) design, specifications, construction, materials, or workmanship;

2) planning, zoning, development, siting, surveying, grading, or compaction; or

3) maintenance, installation, renovation, remodeling, or repair.

But if an act, error, or omission as described above results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

(*Id.* at 27).

19.    Under an "Occupancy and Use" provision, the Builders Risk Policy would not provide coverage if the Conway Center were (a) occupied in whole or in part, or (b) put to its intended use, without The Hanover Insurance Company's prior written consent.

20.    Under the Builders Risk Policy, The Hanover Insurance Company is obligated to pay for a covered loss that takes place during the policy period.

*SOME's Requests to Extend Coverage*

21.    SOME became aware that construction of the Conway Center would not be complete by October 29, 2017, the end of the initial policy period of the Builders Risk Policy.

22.    Accordingly, SOME contacted its insurance broker, Jim Werking, to inquire about extending the Builders Risk Policy.

23.    Mr. Werking contacted Hanover, and, as reported by Mr. Werking, Hanover

agreed to extend the Builders Risk Policy until April 30, 2018.

24.    In early 2018, Mr. Werking joined MDP.  MDP operates as an insurance agent

and broker in the Mid-Atlantic region.

25.    As stated on its website, MDP holds itself out as "a professional insurance agency

devoted to keeping its insured protected and providing them with the best insurance solutions

possible."  MDP claims to have "a wide range of insurance knowledge to write most classes of

business, regardless of their size."

26.    SOME agreed to retain MDP as its authorized insurance broker of record.

27.    By March 2018, portions of the Conway Center were nearing completion.  On

Friday, April 6, 2018, SOME contacted Mr. Werking regarding the insurance implications of

using the portions of the Conway Center that had received a conditional Certificate of

Occupancy, given that other portions of the Conway Center were still under construction.

28.    Mr. Werking responded to SOME later that day by email:

Warren, you are good to go. We have Hanover insuring the builders risk and
Hanover on the permanent policy so if there is some type of loss, Hanover is on
the hook.

Just let us know when to transfer everything to the master/permanent policy.

(*See* **Exhibit C**, 4/6/2018-4/9/2018 email chain among J. Werking, W. Corprew, and J.
Schneider).

29.    SOME responded to Mr. Werking's email and asked him to provide a certificate

of insurance showing that the Conway Center had been added to the Master Policy.  (*See id.*).

30.    On Monday April 9, 2018, Mr. Werking emailed SOME to say he was still

working on SOME's request.  He explained "I'm almost certain we will be able to add the

liability for Conway to the Master policy.  Hanover is internally discussing the best way to

handle the property portion."  (*Id.*).

31.    Mr. Werking followed up with another email to SOME that same afternoon:

Hi Jennifer, Hanover has given us the approval to add Conway to the Master
policy for [SOME] as soon as you give us the approval. We will be adding the
building and the general liability at that time. We would cancel the builders risk
policy that we just extended, and SOME would receive money back for the
additional premium charged to extend the policy. We would also cancel the
liability policies that were extended at no additional premium.

Hanover is aware that some minor construction work is ongoing, and they are OK
with that. There will not be any coverage issues, as relates to this transaction.

(*See* **Exhibit D**, 4/9/2018 email chain between J. Werking and J. Schneider).

32.    SOME responded to Mr. Werking's proposal raising concerns that, because the

ongoing construction was not "minor," SOME's lenders would not approve of the existing

coverage being cancelled.  (*See id.*).

33.    Mr. Werking responded, explaining:

The other option is to leave everything as is and wait to everything is complete
and you give us the go ahead. I also apologize, I thought this is what you wanted.
We certainly don't want the lenders asking questions and getting upset. We try to
keep things as easy as possible.

(*Id.*).

34.    The following day, Tuesday April 10, 2018, Mr. Werking send the following

email:

Jennifer, I just spoke to the builders risk underwriter and she will be adding the
permission to occupy endorsement if it isn't already included. This, as the
endorsement indicates, will allow you to occupy the premises, without affecting
any of the builders risk coverage.

As you know, Hanover has been extending the builders risk as an accommodation
to SOME. The builders risk is scheduled to expire 4/30/18. At that time,
regardless of whether all construction has been completed, Hanover has agreed to
add Conway to the master policy for both building coverage and general liability
coverage. If you feel you will need to extend the builders risk for a longer period

due to concerns about the lenders, please let us know as soon as possible.

(*See* **Exhibit E**, 4/9/2018-4/10/2018 email chain between J. Werking and J. Schneider).

35.     Based upon MDP's representations, SOME understood and reasonably expected and believed that Hanover had agreed that, if a covered loss took place at the Conway Center, Hanover (in Mr. Werking's words) "would still be on the hook" under the Master Policy.  (*See* **Ex. C**).

36.     Based upon MDP's representations, SOME understood and reasonably expected and believed that Hanover had agreed that SOME could allow the Builders Risk Policy to expire because the Conway Center would be insured under the Master Policy "for both building coverage and general liability coverage."  (*See* **Ex. E**).

37.     Neither MDP nor Hanover advised SOME that switching policies would have an effect on the coverage afforded to SOME for the Conway Center.

38.     Accordingly, SOME allowed the Builders Risk Policy to expire on April 30, 2018, with the understanding that equivalent coverage for the Conway Center would continue to be provided under the Master Policy.

39.     SOME's understanding, reasonable expectation, and belief was further confirmed by Evidence of Property Insurance certificates that MDP issued to SOME's lenders.

40.     On May 31, 2018, MDP prepared multiple Evidence of Property Insurance certificates for lenders and other organizations with an interest in the Conway Center.  The certificates each listed both Hanover Insurance Company (the Hanover company that issued the Builders Risk Policy) and Hanover American Insurance Company as providing insurance and listed the policy number for the Master Policy.  Copies of the May 31, 2018 certificates are attached hereto at **Exhibit F**.

41.     On August 10, 2018, MDP prepared and issued an Evidence of Property certificate to NorthMarq Finance, LLC.  The certificate again listed both Hanover Insurance Company and Hanover American Insurance Co. as providing insurance and listed the policy number for the Master Policy.  On an "Additional Remarks Schedule" that accompanied the certificate, MDP stated "Builders Risk Coverage Included on the Hanover policy."  A copy of the August 10, 2018 certificate is attached hereto as **Exhibit G**.

### *The Master Policy*

42.     The Hanover American Insurance Company sold the Master Policy to SOME, which included several different types of liability, crime, and property insurance coverages.

43.      On or around April 30, 2018, the Conway Center at 4414-4430 Benning Road was added as an insured location under the Master Policy.

44.     The Hanover American Insurance Company agreed to provide up to $60,933,000 in limits of coverage for the Conway Center under the Master Policy.

45.     Neither Hanover nor MDP advised SOME that there were any changes from the Builders Risk Policy that would reduce the scope of coverage for the Conway Center.  SOME understood and had a reasonable expectation and belief that coverage for the Conway Center remained the same under the two Hanover policies—the Builders Risk Policy and the Master Policy.

46.     The Master Policy, therefore, included, or should have included, the coverage contained in the expiring Builders Risk Policy.

47.     The Master Policy also included a separate Building and Personal Property Coverage part.

48.     Under the Master Policy's Building and Personal Property Coverage part, The Hanover American Insurance Company promised to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (*See* **Ex. B** at 85).

49.     "Covered Property" was defined to include buildings or structures described in the Declarations, which was amended to include the Conway Center. (*Id.*).

50.     "Covered Causes of Loss" means "direct physical loss unless the loss is excluded or limited in this policy." (*Id.* at 101).

51.     The Master Policy contained an exclusion for: "loss or damage caused by or resulting from . . . **2.d.(4)** [s]ettling, cracking, shrinking or expansion[.]" (*Id.* at 103).

52.     The Master Policy also contained an exclusion for: "loss or damage caused by or resulting from . . . **3.c.(2)** [f]aulty, inadequate or defective . . . [d]esign, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction[.]" (*Id.* at 104).

53.     Exclusion **3.c.(2)**, however, was subject to the following exception: "But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by the Covered Cause of Loss." (*Id.*).

54.     Because of exclusion **2.d.(4)**, exclusion **3.c.(2)** is different from and inconsistent with the "Defects, Errors and Omissions" exclusion in the Builders Risk Policy. Specifically, the exclusion in the Builders Risk Policy does not exclude "settling, cracking, shrinking or expansion" resulting from an error in design: "But if an act, error, or omission as described above results in a covered peril, 'we' do cover the loss or damage caused by that covered peril." (**Ex. A** at 27).

- 10 -

55.     Hanover and MDP did not inform SOME of this difference in policy language, and Hanover and MDP did not inform SOME that the coverage under the Master Policy would be different from the coverage under the Builders Risk Policy.

### *Property Damage is Discovered and Reported to Hanover*

56.     In or about December 2018, SOME first noticed physical damage to structural members in the parking garage of the Conway Center, including cracks in concrete slabs. SOME contacted the designers, W+A and MCE, and asked them to inspect the cracks and advise. SOME was advised by the designers that it should not use the garage.

57.     In March 2019, SOME retained an independent structural engineer to investigate the damage. The structural engineer identified numerous failed structural members and evidence of serious impairment to the structural integrity of the Conway Center. The structural engineer concluded that the failed structural members had not been designed to withstand the Code-required or actual loads that they were carrying.

58.     Upon information and belief, by the time the seventh story of the Conway Center was being constructed, the failed structural members had experienced greater loads than they had been designed to carry (a concept known as overstress).

59.     When the structural members became overstressed, they began to suffer permanent physical damage.

60.     Structural members that become overstressed suffer permanent physical damage, as even if the load is removed, they can no longer be used for the purpose originally intended.

61.     Upon information and belief, failed structural members were overstressed and therefore experienced physical damage before April 30, 2018.

62.     Upon information and belief, the failed structural members continued to experience additional physical damage after April 30, 2018.

63.     The failed structural members experienced such physical damage before it became manifest in the form of visible cracks and displacement that was discovered at the Conway Center in December 2018.

64.     The damaged structural members forced the complete closure of the parking garage and loading dock and restricted use of the above-grade space throughout the building.

65.     In order to support the failed structural members and prevent further damage to the Conway Center, MCE arranged for extensive temporary shoring to be installed.  The shoring remains in place pending a permanent repair.  To date, the company that provided the shoring claims to be owed nearly two million dollars.

66.     On March 19, 2019, SOME, through its insurance broker, MDP, notified Hanover of the loss at the Conway Center and provided supporting documentation, including photographs of the damaged structural members and correspondence describing the shoring installed to prevent further damage.

### *Hanover Investigates and Denies Coverage*

67.     Hanover retained a civil engineer to inspect the Conway Center and opine on the cause of the damage.

68.     On April 12, 2019, Hanover sent a letter to SOME denying coverage.  Hanover's letter cited only to exclusions 2(d) and 3(c) under the Building and Personal Property Coverage part of the Master Policy.  Hanover did not cite to or reference any of the Builders Risk Coverage provisions.

69.     Hanover claimed that "the cause of the cracks in the floor framing of the parking garage is consistent with a design issue, a construction issue, or drying shrinkage of the concrete." Hanover asserted that design issue or shrinkage are excluded perils under the Master Policy.

70.     Upon information and belief, Hanover did not investigate when any of the physical damage to the Conway Center had taken place. Significantly, it did not investigate whether any such physical damage had taken place before the Builders Risk Policy expired.

### *SOME's Current and Future Losses*

71.     In order to repair the failed structural members and prevent further collapse of the Conway Center, the temporary shoring arranged by MCE remains in place throughout the garage level and above grade to support the building.

72.     The structural issues and damages continue to present themselves throughout the Conway Center building and have, among other things, resulted in the indefinite closure of the parking garage.

73.     Repair of the damaged structural members will affect major systems in the building, such as the electrical and mechanical systems, portions of which will have to be relocated as a result of the repair.

74.     The cost to repair the damage is estimated by knowledgeable construction industry experts to be in the $30 million range.

### FIRST CAUSE OF ACTION

### *Against The Hanover American Insurance Company for Breach of Contract*

75.     SOME repeats and re-alleges each and every fact set forth in paragraphs 1 through 74 as if fully set forth herein.

76.     The Master Policy is a written contract of insurance obligating The Hanover American Insurance Company to provide coverage to SOME according to the terms of the Master Policy.

77.     SOME paid all premiums due under the Master Policy.

78.     All conditions precedent to bringing this action have been waived, excused, performed, or otherwise occurred.

79.     The property damage that occurred at the Conway Center is a covered loss under the Master Policy.

80.     Physical damage took place at the Conway Center during the policy period of the Master Policy, including overstress of the structural members of the building's garage. The overstress caused direct physical damage and is therefore a covered peril under the Builders Risk Coverage in the Master Policy.

81.     The Master Policy exclusion "c. Defects, Errors, And Omissions" is not enforceable and does not apply. The Hanover American Insurance Company cannot enforce the exclusion because it differs from the coverage in the Builders Risk Policy, SOME was not informed that its coverage would change in the Master Policy, and SOME did not agree to any such change. Even if the physical damage to the building was caused solely by a defect in design, the physical damage nonetheless is covered, and SOME had a reasonable expectation of coverage with respect to that loss.

82.     The cracks in the Conway Center garage are also a form of direct physical damage covered under the Master Policy's Building and Personal Property Coverage part.

83.    The exclusion (d)(4) for "Settling, cracking, shrinking or expansion;" does not apply because the cracks in the structural members did not <u>cause</u> the physical damage that occurred, but is the physical damage itself.

84.    The Hanover American Insurance Company breached its contractual obligations by failing to acknowledge and to provide coverage for the property damage at the Conway Center.

85.    SOME has suffered damages as a direct and proximate result of The Hanover American Insurance Company's breach.

## SECOND CAUSE OF ACTION

*Against Both The Hanover Insurance Company and*
*The Hanover American Insurance Company for Breach*
*of the Implied Covenant of Good Faith and Fair Dealing*

86.    SOME repeats and re-alleges each and every fact set forth in paragraphs 1 through 74 as if fully set forth herein.

87.    Hanover had an implied duty under both the Builders Risk Policy and the Master Policy to act in good faith and fair dealing with respect to SOME and its right to receive the benefits of the contracts it purchased.

88.    Hanover knew that the Conway Center was still under construction when it agreed to cancel the Builders Risk Policy and added the Conway Center to the Master Policy.

89.    Hanover did not inform SOME that, by agreeing to cancel the Builders Risk Policy before construction was complete, SOME would be jeopardizing its rights to the coverage that it would have been entitled to under the Builders Risk Policy.

90.     Because it did not inform SOME of any alleged material change, Hanover breached its implied duty of good faith and fair dealing when it denied coverage for the loss at the Conway Center under Master Policy exclusion "c. Defects, Errors, And Omissions."

91.     Hanover's implied duty of good faith and fair dealing also extended to its investigation of SOME's claim for coverage.

92.     Hanover knew that coverage under the Builders Risk Policy and the Master Policy depended on when physical damage had actually occurred, and not when it was discovered.

93.     Upon information and belief, in evaluating SOME's claim for coverage, Hanover failed to investigate when the physical damage took place and failed to consider the availability of coverage under the Builders Risk Policy.

94.     SOME has suffered damages as a direct and proximate result of Hanover's breaches of the implied covenants of good faith and fair dealing.

### THIRD CAUSE OF ACTION

*Declaratory Judgment Against Both*
*The Hanover Insurance Company and*
*The Hanover American Insurance Company*

95.     SOME repeats and re-alleges each and every fact set forth in paragraphs 1 through 74 as if fully set forth herein.

96.     This is a claim for a declaratory judgment pursuant to 28 U.S.C. § 2201.

97.     An actual and justiciable controversy presently exists between SOME and Hanover with respect to SOME's rights and Hanover's duties and obligations under both the Builders Risk Policy and the Master Policy in connection with the damage to the Conway Center.

98.     The controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.  The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

99.     The Policies are written contracts of insurance obligating Hanover to provide coverage to SOME according to their terms.

100.    SOME paid all premiums due under the Policies.

101.    All conditions precedent to bringing this action have been waived, excused, performed, or otherwise occurred.

102.    Physical damage—overstress of the structural members in the building's garage— took place at the Conway Center during the policy period of the Builders Risk Policy.  The overstress caused direct physical damage and is therefore a covered peril under the Builders Risk Policy.

103.    SOME is entitled to a declaration that Hanover is required, under the terms of the Builders Risk Policy, to provide coverage to SOME the costs to repair and/or replace the damaged structural members at the Conway Center and all other damage resulting from the covered loss (unless otherwise subject to a sublimit or excluded under the Builders Risk Policy).

104.    Physical damage also took place during the policy period of the Master Policy. SOME is therefore also entitled to a declaration that Hanover is required, under the terms of the Master Policy, to provide coverage to SOME the costs to repair and/or replace the damaged structural members at the Conway Center and all other damage resulting from the covered loss (unless otherwise subject to a sublimit or excluded under the Master Policy).

## FOURTH CAUSE OF ACTION

### *Against MDP for Negligence*

105.    SOME repeats and re-alleges each and every fact set forth in paragraphs 1 through 74 as if fully set forth herein.

106.    MDP owed a duty to SOME to exercise reasonable care with respect to the placement of insurance coverage for the Conway Center and its rendering advice to SOME regarding same.

107.    MDP was aware of the coverage afforded by the Builders Risk Policy and SOME's concerns with transferring the Conway Center to the Master Policy.  MDP represented to SOME that Hanover had agreed that transferring the Conway Center property to the Master Policy would not affect the scope of coverage, and MDP did not inform SOME that there would be any change in its coverage.  In fact, MDP affirmatively represented that there would be no change in coverage.

108.    MDP knew that SOME would rely on the advice rendered by it and its agents.

109.    MDP breached its duty to SOME to exercise reasonable care by misrepresenting the coverage available to SOME for the Conway Center under the Master Policy, by misrepresenting Hanover's agreement to coverage under the Master Policy with the same terms as the Builders Risk Policy, by misrepresenting that the coverage would be the same under the Builders Risk and Master Policies, and/or by failing to advise SOME of the option to procure additional coverage.

110.    As a direct and proximate result of MDP's breaches of duty, without any negligence on the part of SOME, SOME has sustained damages and losses in an actual and estimated amount in excess of $30 million.

## PRAYER FOR RELIEF

**WHEREFORE**, SOME hereby demands judgment as follows:

i.      On the First Cause of Action, entry of judgment against The Hanover American Insurance Company for all damages proximately caused by its breach of contract in an actual and estimated amount in excess of $30 million, plus costs, interest, disbursements, and attorneys' fees; and

ii.      On the Second Cause of Action, entry of judgment against The Hanover Insurance Company and The Hanover American Insurance Company for all damages proximately caused by their breach of the implied covenants of good faith and fair dealing in an actual and estimated amount in excess of $30 million, plus costs, interest, disbursements, and attorneys' fees; and

iii.      On the Third Cause of Action, entry of judgment declaring SOME's right to coverage under the Builders Risk Policy and the Master Policy for the costs to repair and/or replace the physical damage at the Conway Center and any other damage resulting from the covered loss; and

iv.      In the alternative, on the Fourth Cause of Action, entry of judgment against MDP for all damages proximately caused by its breach in an actual and estimated amount in excess of $30 million, plus costs, interest, disbursements, and attorneys' fees; and

v.      For such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

SOME hereby demands a trial by jury on all issues so triable.

Dated:  February 25, 2021                    Respectfully submitted,

Michael Evan Jaffe #88443
Laura Freid-Studlo #499837
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth St., NW
Washington, DC 20036
202.663.8000
michael.jaffe@pillsburylaw.com
laura.freidstudlo@pillsburylaw.com

*Attorneys for Plaintiff SOME, Inc.*