# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOME, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE HANOVER INSURANCE CO., *et al.*, <br><br> Defendants. | Civil Action No. 21-493 (BAH) <br><br> Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

In 2015, plaintiff SOME, Inc. contracted to construct a facility providing housing and services to low-income and homeless individuals, and obtained two insurance policies, covering the period of October 29, 2015 to January 1, 2019, for the construction project from defendants The Hanover Insurance Company and The Hanover American Insurance Company (together, "Hanover"), through its insurance broker, defendant Maury, Donnelly & Parr, Inc. ("MDP"). Compl. ¶ 1, ECF No. 1. In 2018, after noticing severe structural damage to the newly built facility, plaintiff notified Hanover of the loss due to necessary repairs at the facility. *Id.* ¶¶ 57, 66. Hanover denied coverage. *Id.* ¶ 68. Plaintiff then filed this action, alleging, in four claims, that Hanover had wrongfully refused to provide coverage for the loss and that MDP negligently misrepresented the coverage procured for plaintiff.

MDP now moves, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss plaintiff's single claim against it, arguing that the claim will not be ripe until plaintiff's claims against Hanover have been adjudicated. Def. MDP's Mot. Dismiss at 1 ("Def.'s Mot."), ECF No. 15. For the reasons explained below, MDP's motion to dismiss is denied since plaintiff's

1

alleged harm due to denial of coverage renders the claim against MDP as ripe as those against Hanover.

I.     BACKGROUND

Plaintiff is an "interfaith, community-based organization" that "help[s] homeless and low-income people in the District of Columbia" by providing food, clothing, and healthcare, as well as services such as affordable housing, job training, addiction treatment, and counseling. Compl. ¶ 13.  In 2015, plaintiff entered into an agreement with a construction company to build the Conway Center—a facility "providing 202 units of affordable housing, a job training center, and medical and dental care facilities." *Id.* ¶ 14.

Plaintiff insured the construction of the Conway Center from Hanover under a "Builders Risk Policy," which "provided coverage for direct physical loss or damage caused by a covered peril to buildings or structures while in the course of construction, erection or fabrication." *Id.* ¶ 16 (internal quotation marks and citation omitted).  When plaintiff realized that the Center would not be completed by the October 2017 expiration date of the Builders Risk Policy, SOME contacted its insurance agent to extend the policy with Hanover.  *Id.* ¶¶ 21–22.  The insurance agent did so, and Hanover agreed to extend the policy through April 2018.  *Id.* ¶ 23.  In "early 2018," the insurance agent joined MDP, *id.* ¶ 24, and plaintiff "agreed to retain MDP as its authorized insurance broker of record," *id.* ¶ 26.

In March 2018, the Conway Center was nearing completion, with some portions still under construction.  *Id.* ¶ 27.  Plaintiff consulted with its insurance agent, who advised transferring liability for the Conway Center from the Builders Risk Policy to plaintiff's Master Policy with Hanover.  *See id.* ¶¶ 28–34.  Based on MDP's assurances that building liability coverage would remain the same under the Master Policy, plaintiff transferred liability for the

2

Conway Center to the Master Policy and let the Builders Risk Policy expire on April 30, 2018. *Id.* ¶¶ 35–38.

In December 2018, plaintiff noticed structural damage in the parking garage of the Center. *Id.* ¶ 56. The structural engineer retained by plaintiff to investigate the damage concluded that the structure "had not been designed to withstand the Code-required or actual loads they were carrying." *Id.* ¶ 57. Temporary shoring was installed—at a cost of almost $2 million—to prevent further damage to the Center pending permanent repair. *Id.* ¶ 65. The cost to repair the damage permanently was "estimated by knowledgeable construction industry experts to be in the $30 million range." *Id.* ¶ 74. In March 2019, plaintiff, acting through MDP, notified Hanover of the loss and provided supporting documentation. *Id.* ¶ 66. One month later, Hanover denied coverage for the loss at the Conway Center, citing exclusions from the building coverage part of the Master Policy for "design issue[s] or shrinkage." *Id.* ¶ 69. This exclusion for shrinkage resulting from an error in design was not included in the original Builders Risk Policy. *Id.* ¶ 54.

Plaintiff instituted this lawsuit, asserting in Counts One through Three against Hanover, breach of contract and breach of the implied covenant of good faith and fair dealing, alleging that the Master Policy exclusion did not apply to the Conway Center loss, *id.* ¶¶ 81–85, and that Hanover breached its implied covenant of good faith and fair dealing by failing to inform plaintiff that canceling the Builders Risk Policy would materially change its coverage, *id.* ¶¶ 87–90. In Count Three, plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, "that Hanover is required, under the terms of the Master Policy, to provide coverage of the costs to repair and/or replace the [structural damage] at the Conway Center." *Id.* ¶ 104. Finally, in Count Four against MDP, plaintiff claims that MDP was negligent by "misrepresenting the

3

coverage available to [plaintiff] for the Conway Center under the Master Policy, by misrepresenting Hanover's agreement to coverage under the Master Policy with the same terms as the Builders Risk Policy, by misrepresenting that the coverage would be the same under the [two] [p]olicies, and/or by failing to advise [plaintiff] of the option to procure additional coverage." *Id.* ¶ 109. As relief, plaintiff seeks against both Hanover and MDP "all damages proximately caused by [their] breach in an actual and estimated amount in excess of $30 million, plus costs, interest, disbursements, and attorneys' fees." *Id.* at 19 ("Prayer for Relief").

Plaintiff characterizes its negligence claim against MDP as a claim "[i]n the alternative," *id.*, but suggests that MDP may be liable even if plaintiff succeeds in its claims against Hanover, either because (1) MDP's negligence made establishing the coverage claim against Hanover more difficult, or (2) Hanover's obligations may not be found to cover the full amount of plaintiff's damages, *see* Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 9, ECF No. 18. *See also* Compl. ¶ 3 (claiming that "MDP is liable to SOME for the resulting losses that would have been covered had MDP procured the coverage that it described").

MDP now seeks to dismiss the single claim in Count Four against it, for lack of subject-matter jurisdiction, arguing that the negligence claim is not yet ripe. *See generally* Def.'s Mot.

## II. LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))). Article III of the Constitution sets this jurisdictional boundary by restricting federal courts to hearing only "Cases" or "Controversies," U.S. CONST. art. III, § 2, a limitation that is "fundamental to the judiciary's proper role in our system of government." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)

(quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Federal courts therefore have a corresponding "independent obligation to ensure that they do not exceed the scope of their jurisdiction" and "must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Absent subject-matter jurisdiction over a case, the court must dismiss it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); FED. R. CIV. P. 12(h)(3).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)); *see also Valambhia v. United Republic of Tanzania*, 964 F.3d 1135, 1139 (D.C. Cir. 2020) ("Where . . . the 'defendant contests only the legal sufficiency of plaintiff's jurisdictional claims, the standard is similar to that of Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief.'" (quoting *Schubarth v. Fed. Republic of Germany*, 891 F.3d 392, 398 (D.C. Cir. 2018))).

Embedded in the court's subject matter jurisdiction is the ripeness inquiry, which "is subsumed into the Article III requirement of standing . . . requir[ing] a [plaintiff] to allege, *inter alia,* an injury-in-fact that is 'imminent' or 'certainly impending.'" *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 403 (D.C. Cir. 2020) (quoting *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012)). A claim does not meet this constitutional threshold "if it rests upon contingent 'future events that may not occur as anticipated, or indeed may not occur at all.'"

*Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 581 (1985)). In other words, "if a plaintiff's claim . . . depends on future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe." *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 425 (D.C. Cir. 2007) (quoting *McInnis–Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 72 (1st Cir. 2003)).

"Even if a case is 'constitutionally ripe,' . . . there may also be 'prudential reasons for refusing to exercise jurisdiction.'" *Am. Petroleum Inst.*, 683 F.3d at 386 (quoting *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003)). "Prudentially, the ripeness doctrine exists to prevent the courts from wasting . . . resources by [becoming] prematurely entangl[ed] . . . in abstract disagreements, and, where . . . other branches of government are involved, to protect the other branches from judicial interference until their decisions are formalized and their 'effects felt in a concrete way by the challenging parties.'" *Nat'l Treasury Emps. Union v. United States.*, 101 F.3d 1423, 1431 (D.C. Cir. 1996) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977)). The Court "decides whether to defer resolving a case for prudential reasons by 'evaluat[ing] (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'" *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 632 (D.C. Cir. 2017) (alteration in original) (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808).

## III. DISCUSSION

MDP argues that this claim is not ripe for adjudication because it "rests upon contingent circumstances that may not occur as anticipated, or may not happen at all." Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 4, ECF No. 15-1. "In the event that Plaintiff's claims against the Hanover entities for insurance coverage are successful," MDP contends, "Plaintiff will have

suffered no harm from any alleged act or omission by MDP, and will have no claim whatsoever to assert as to MDP . . . ." *Id.* MDP concedes that plaintiff's claim would be ripe if pursued against MDP as sole defendant, given that SOME has alleged an injury when insurance coverage was denied, but argues that pursuing recovery from Hanover changes the nature of plaintiff's claim against MDP, making it entirely contingent on the outcome of the claim against Hanover, and therefore unripe. *Id.* at 5.

Plaintiff responds that its claim is ripe because it is "not contingent on some future extra-judicial event, but only on events that have already happened." Pl.'s Opp'n at 2. Plaintiff argues that its claim against MDP ripened when coverage was denied, and the fact that "its existing liability might be reduced in the future" by a judgment against Hanover does not "giv[e] rise to jurisdictional ripeness concerns." *Id.* at 8. In plaintiff's view, MDP's admission that the claim would be ripe if it were being pursued as sole defendant "should end the ripeness inquiry," because "MDP therefore admits that SOME's claim against MDP is real and substantial, and the relief it seeks from this court is specific, not hypothetical or advisory." *Id.* at 10. Plaintiff characterizes this as "nothing more than a challenge to a party's right to pursue alternative claims in a single case," a "challenge [that] has long been found unavailing." *Id.* at 2–3.

Here, plaintiff has alleged damages resulting from MDP's tortious conduct, so the claim is ripe. *See RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 135 (D.D.C. 2011) ("Unlike pre-enforcement challenges to administrative regulations, claims for breach of contract 'cannot be described as premature since they speak of damages that have already been suffered and are being suffered.'" (quoting *Casanova v. Marathon Corp.*, 256 F.R.D. 11, 15 (D.D.C. 2009). The ripeness doctrine prevents courts from adjudicating disputes based on contingencies or hypotheticals that have not yet come to pass. *See, e.g.*, *Larsen v. United States* Navy, 525 F.3d

7

1, 5 (D.C. Cir. 2008) (rejecting plaintiffs' claim for constructive credit towards pay and retirement benefits from the Navy as unripe because they were contingent on being hired—"a vital condition that has yet to occur"). There are no contingencies or hypotheticals here. Instead, plaintiff has, as MDP concedes, sufficiently pleaded that plaintiff suffered injury and loss, entitling it to damages in excess of $30 million, proximately caused by MDP's alleged negligence. *Cf. Sys. Council EM-3 v. AT&T Corp.*, 159 F.3d 1376, 1382–83 (D.C. Cir. 1998) (finding not ripe for review contract claim arising from defendant's assignment of welfare plan obligations where defendant "has not repudiated anything" and no allegation that assignee "has been unwilling or unable to provide the benefits it is obligated to provide"); *Beatley v. Ayers*, Nos. 19-1777, 19-1809, 2021 U.S. App. LEXIS 6989, at *8–9 (4th Cir. Mar. 10, 2021) (per curiam) (finding breach of contract claim "not ripe" where plaintiff "has not yet suffered any damages caused by the Defendants' failure to perform their obligations . . . ").

This conclusion does not change because plaintiff may have pled claims in the alternative against two different parties.[1] *See* FED. R. CIV. P. 8(d)(3) ("A party may state as many separate claims . . . as it has, regardless of consistency."); *see also Overby v. Nat'l Ass'n of Letter Carriers*, 595 F.3d 1290, 1297 (D.C. Cir. 2010) ("While it is no doubt true that the complaint and the evidence of a plaintiff must be sufficient to put defendants on notice of any theory of recovery upon which the plaintiff is relying, this does not preclude the possibility of plaintiffs arguing alternative theories, nor the possibility of the court's relying upon a 'lesser' alternative in its decision."). That the outcome of other claims against a co-defendant in the same case might

---

[1] While plaintiff repeatedly refers to its claim against MDP as made "in the alternative" to its claims against Hanover, *see* Compl. at 19; Pl.'s Opp'n at 2–3, 11, in so doing, plaintiff neither posits nor concedes that MDP will not be liable at all if plaintiff prevails on the claims against Hanover. Plaintiff suggests that there may not be a "binary outcome of SOME's coverage claims," apparently meaning that plaintiff may not be fully "'made whole' if it succeeds in its claims [against Hanover]." Pl.'s Opp'n at 9. This issue is not material to the ripeness question, however, and the analysis below tracks plaintiff's complaint in describing the claims as made "in the alternative."

lessen or eliminate MDP's liability is not a contingency giving rise to ripeness concerns. Hanover has already denied coverage. Plaintiff need not delay and separately litigate its claims against MDP based on the mere possibility that it might prevail against another party.

As plaintiff correctly points out, *Beach TV Properties, Inc. v. Solomon*, 254 F. Supp. 3d 118 (D.D.C. 2017), is illustrative of this point—that a claim is not rendered unripe merely because it is or may be contingent upon the outcome of another claim in the same case. Pl.'s Opp'n at 10–11. There, the plaintiff sued its former lawyer for negligence and then sought to add another negligence claim against a second attorney, who was in the same firm and had taken over as lead counsel for plaintiff, for failing to inform plaintiff the original lawyer had committed malpractice and that his withdrawal from the case could adversely affect their malpractice claim. *Beach TV Props.*, 254 F. Supp. 3d at 123. The defendants challenged this negligence claim on ripeness grounds, arguing that it "would ripen only if the Court rules that Plaintiff's malpractice claim lost value as a result of [the second attorney]'s negligence." *Id.* at 131. The court dismissed the ripeness challenge, finding that, "[n]otwithstanding the uncertain nature of the *source* of [the plaintiff]'s alleged damages, [the plaintiff] pleaded sufficiently concrete alternative theories for recovery." *Id.* at 132. "Under one alternative, [the second attorney] was not negligent because she did not cause [plaintiff]'s malpractice claim to lose any value. Under the other, [the second attorney]'s malpractice adversely affected [plaintiff]'s rights with respect to the malpractice claim against [the first attorney]." *Id.* In *Beach TV*, the court expressly held that "[s]imply because the outcome of one claim is contingent upon the outcome of another claim in the case does not mean that the first claim cannot be alleged or that the first claim is not ripe." *Id.* (quoting *Dimensional Music Publ'g, LLC v. Kersey ex rel. Estate of Kersey*, 448 F. Supp. 2d 643, 653 (E.D. Pa. 2006)). That principle is sound and applies with full force here.

9

In this case, plaintiff pleads similarly concrete alternative theories for recovery: under one alternative, MDP may not be liable if the loss from the Conway Center is covered under the policy with Hanover; under the other, MDP's negligence adversely affected the scope of plaintiff's insurance coverage, and MDP will be liable. Alternative theories for recovery are no less valid in the insurance context. Plaintiff's claim against MDP is a straightforward claim in the alternative, reliant on no contingencies giving rise to ripeness concerns, and MDP's motion to dismiss is without merit.

MDP relies on several out-of-circuit cases in which claims against insurance brokers were dismissed as unripe, Def.'s Mot. at 6–7, but these cases are distinguishable and unpersuasive. First, MDP points to *Travelers Property Casualty Co. of America v. M.B. Kahn Construction Co.*, Case No. 3:20-cv-01304, 2021 U.S. Dist. LEXIS 58736 (D.S.C. Mar. 29, 2021), in which no actual injury had been alleged. In that case, an insurance company sought indemnification against its insured, a general contractor, in the event the contractor was found liable in a separate construction defect case. *Id.* at *12. The contractor then filed a third-party claim for negligence against its insurance broker, alleging that "when it decided to transfer insurance from [the insurance company] to [two other insurance companies], [m]aintaining continuous and uninterrupted coverage for the Project . . . was a key issue . . . [and] [i]f the policies [were] found not to provide coverage [in the underlying case] . . . [the contractor] would be damaged by [the broker]'s actions." *Id.* at *94–95 (internal quotations and citations omitted). The court dismissed this third-party claim against the broker due to reliance on too many contingencies, including that the contractor had not yet been found liable in the construction defect case, nor had the two other insurance companies denied insurance coverage. *Id.* at *95– 96. By contrast, here, plaintiff has already incurred concrete damages—to the tune of in excess

of $30 million—and Hanover has denied coverage. No further factual development need occur before the dispute between MDP and plaintiff can be adjudicated.

Next, MDP relies on cases relying on aspects of Florida insurance law that are wholly inapplicable here. Def.'s Mem. at 6–7 (citing *JWC Hamptons, Inc. v. Empire Indem. Ins. Co.*, Case No. 19-cv-62232, 2020 U.S. Dist. LEXIS 1133 (S.D. Fla. Jan. 3, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 91648 (S.D. Fla. Jan. 24, 2020), and *Aspen Am. Ins. Co. v. Wynn*, Case No. 19-cv-23643, 2021 U.S. Dist. LEXIS 21238 (S.D. Fla. Feb. 4, 2021)). In these cases, claims were dismissed as unripe because, under a principle articulated by the Florida Supreme Court in applying that State's insurance law, any action between an insured and insurer must be finalized before the insured's claim against a broker accrues. *See Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1065 (Fla. 2001) (dismissing claim against insurance agent because, under Florida law, "a negligence/malpractice cause of action accrues when the client incurs damages at the conclusion of the related or underlying judicial proceedings"); *JWC Hamptons, Inc.*, 2020 U.S. Dist. LEXIS 1133, at *3–4 (citing *Blumberg* to dismiss as unripe negligence claim against plaintiff's insurance agent, in suit against insurance carrier relating to unpaid insurance claims for hurricane property damage); *Aspen Am. Ins. Co.*, 2021 U.S. Dist. LEXIS 21238, at *6 (citing *Blumberg* to dismiss third-party complaint against insurance broker for negligence). MDP does not even assert that a rule similar to the one articulated in *Blumberg* applies under District of Columbia law.

Finally, MDP relies on another out-of-circuit case, *Terry Black's Barbecue, LLC v. State Automobile Mutual Insurance Co.*, Case No. 1:20-CV-665, 2020 U.S. Dist. LEXIS 207636 (W.D. Tex. Nov. 5, 2020), *report and recommendation adopted*, Order, Case No. 1:20-CV-665, ECF No. 21 (W.D. Tex. Nov. 23, 2020), in which plaintiffs challenged the denial of their

insurance coverage for business losses arising when they were "forced to cease . . . operations" because of "Civil Authority orders and mandates" issued during the COVID-19 pandemic, *id.* at *2. The plaintiffs sued for breach of contract against their insurer and, in the event that claim did not succeed, for negligence against their Texas insurance broker for failing to procure such coverage. *Id.* at *9. The insurer defended removal of the action to federal court, arguing that the broker, headquartered in the same state as the plaintiffs, had been fraudulently joined because the claim against it was unripe. *Id.* at *7. The court dismissed the claim against the broker after determining that it was "entirely contingent on the resolution of Plaintiffs' claims against [the insurer]." *Id.* at *11.

While factually analogous to this case, the analysis in *Terry Black's Barbecue* rested on inapposite cases in which either coverage had not yet been denied by the plaintiff-insurer, who was seeking a declaratory judgment that the relevant loss was not covered, *see id.* at *12 (citing *Monroe Guar. Ins. Co. v. Newtex Realty, LP*, Case No. 3:18-CV-00256, 2019 U.S. Dist. LEXIS 45985, at *2 (N.D. Tex. Mar. 4, 2019, *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 44562 (N.D. Tex. Mar. 19, 2019)), or Florida insurance law was applied, *see id.* (citing *JWC Hamptons, Inc.*, 2020 U.S. Dist. LEXIS 1133, at *3). Neither of those circumstances are present here—and neither appear to have been present in *Terry Black's Barbecue*—so the analysis in that case is simply unpersuasive.[2]

---

[2] The parties disagree over whether the prudential ripeness test applies here. MDP argues that both the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration" must be considered. Def.'s Mem. at 4 (quoting *Abbott Labs.*, 387 U.S. at 149). Plaintiff counters that these prudential considerations are only relevant in cases challenging administrative agency action and seeking equitable relief. Pl.'s Opp'n at 6. This dispute need not be resolved because, even assuming the prudential ripeness factors apply outside of the government agency context, MDP's prudential ripeness arguments are without merit. First, MDP argues that plaintiff's negligence claim "do[es] not raise [a] purely legal question[]," Def.'s Mem. at 5, but obviously prudential deferral is not necessary simply because factual disputes require resolution. Indeed, resolving disputed facts is integral to the process of litigation involving contractual and tort claims, and defendant incorrectly relies on cases dealing with judicial review of agency action, *see id.* at 4 (quoting *Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 364 (D.C. Cir. 2005)). Second, MDP contends that "all parties would benefit from postponing adjudication of

12

## IV. CONCLUSION

For the foregoing reasons, plaintiff's claim against MDP is ripe for adjudication. Accordingly, MDP's motion to dismiss for lack of subject-matter jurisdiction is denied.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: July 13, 2021

_____
BERYL A. HOWELL
Chief Judge

---

the . . . dispute between Plaintiff and MDP until the claims against the insurance defendants are resolved," and that being forced to defend itself in this litigation is a hardship significant enough to weigh against adjudication. *Id*. at 5. Delay of consideration of plaintiff's alternative claim against MDP, however, imposes a greater hardship on plaintiff by postponing discovery from MDP and risking the running of the statute of limitations on the negligence claim against this defendant. *See* Pl.'s Opp'n at 14. Even if not time-barred, in the event the pending claims against Hanover are unsuccessful, plaintiff—not to mention the Court—would be forced to relitigate the case, in whole or part, against MDP, delaying resolution of all now pending claims. *See id*. at 1–2 (stressing that, if MDP's motion were granted, plaintiff "would have to relitigate some of the same issues to establish MDP's negligence in failing to secure the required coverage. That re-litigation would not only be more costly, as some discovery or motion practice would be repeated (now with MDP's participation), but would subject SOME to a risk of inconsistent results, and further delay resolution of this case. And, beyond the adverse effect on SOME, the course urged by MDP would impose additional burdens as well on the Court, which would be asked to try much of the case twice.") Prudential considerations of both fairness and judicial economy counsel against dismissing this claim on ripeness grounds.